AO 91 (Rev. 11/11) Criminal Complaint (modified by USAO for telephone or other reliable electronic means)

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Ohio

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | ) Case No.  2:21-mj-306 |
| | ) |
| CHADD MICHAEL ANDERSON | ) |
| | ) |
| | ) |
| _Defendant(s)_ | |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____(Dates in attachment)_____ in the county of _____Franklin_____ in the
_____Southern_____ District of _____Ohio_____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| | See Attachment A |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

_____
_Complainant's signature_

TFO CHRISTOPHER ELLISON, DEA
_Printed name and title_

Sworn to before me and signed in my presence.

Date: _____April 30, 2021_____

City and state: _____Columbus, Ohio_____

_____
Kimberly A. Jolson
United States Magistrate Judge

**ATTACHMENT A**

COUNT 1

On or about April 30, 2019, in the Southern District of Ohio, CHADD MICHAEL ANDERSON knowingly and intentionally distributed 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance, in violation of Title 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii).

COUNT 2

On or about May 22, 2019, in the Southern District of Ohio, CHADD MICHAEL ANDERSON knowingly and intentionally possessed with intent to distribute 5 grams or more of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance, in violation of Title 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii).

COUNT 3

On or about May 22, 2019, in the Southern District of Ohio, CHADD MICHAEL ANDERSON knowingly and intentionally possessed a firearm in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States -- namely, knowingly and intentionally possessing with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1), all in violation of 18 U.S.C. § 924(c)(1)(A).

COUNT 4

On or about April 21, 2021, in the Southern District of Ohio, CHADD MICHAEL ANDERSON knowingly and intentionally possessed with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance, in violation of Title 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii).

COUNT 5

On or about April 21, 2021, in the Southern District of Ohio, CHADD MICHAEL ANDERSON knowingly and intentionally possessed a firearm in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States -- namely, knowingly and intentionally possessing with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1), all in violation of 18 U.S.C. § 924(c)(1)(A).

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Christopher L. Ellison, (hereafter referred to as the Affiant) being duly sworn depose and state:

1. I am employed as a Sergeant for the Ohio State Highway Patrol, currently assigned full-time as a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA), Columbus District Office. As such, I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18 U.S.C.§ 2510(7), that is, an officer of the United States empowered by law to conduct criminal investigations and make arrests for offenses enumerated in Title 18 U.S.C.§ 2516. Your affiant has been employed by the State of Ohio as a "Law Enforcement Officer," as defined in the Ohio Revised Code Section 2901.01, since 2004. Your affiant is empowered to investigate, to make arrests with or without warrants and to execute search warrants under the authority of Title 21 U.S.C. § 878 and the Ohio Revised Code.

2. Prior to being assigned to the DEA Task Force, your affiant was the assistant commander of an inter-agency collaborative between the Ohio State Highway Patrol, Cincinnati Police Department, and DEA – Cincinnati from 2017-2018, the assistant commander of the Ohio State Highway Patrol Wilmington District Criminal Patrol Unit from 2016 – 2017, assigned as a Task Force Officer with the West Central Ohio Crime Task Force in Lima Ohio from 2014 – 2016, and assigned as a road patrol trooper from 2004 – 2014.

   (a) I attended the Ohio State Highway Patrol Academy in 2004, receiving approximately 33 weeks of specialized police training including but not limited to: search and seizure, investigative techniques, testifying in court, evidence collection, interview and interrogation, and controlled substance identification.

   (b) I have attended and successfully completed thousands of hours of advanced training throughout the country. Course topics to include, but not limited to: crime scene and evidence processing, interview and interrogation, narcotics investigations, undercover drug investigation, confidential informant management, gang enforcement and investigation, scientific identification of marijuana, advanced surveillance techniques, vehicle theft investigations, clandestine laboratory processing and safety, organized crime and money laundering investigations, human trafficking, drug recognition expert, supervisor skills training, and narcotics supervision skills.

   (c) I regularly attend training conferences across the country in order receive up to date information and trends on the evolving drug trades and techniques being used throughout the United States.

   (d) I am a certified police instructor with specialized certifications to instruct the following advanced fields: vehicle theft and identification, gang awareness, prisoner booking and handling, interview and interrogation, drug awareness,

drugs that impair and the effects when consumed, stolen property investigations, gambling and money laundering, photo line ups, surveillance, incident command system, interdiction for the protection of children.

(e) During the course of my law enforcement career, I have had experience in debriefing defendants and interviewing participating witnesses, cooperating individuals and other persons who have personal knowledge and experience regarding the amassing, spending, conversion, transportation, distribution, and concealment of records and proceeds of trafficking in controlled substances.

(f) As a task force officer and police officer, I have participated in the execution of numerous search warrants at the residences and businesses of narcotics traffickers, safe houses, houses used for trafficking and consuming of narcotics, and have participated in numerous arrests for drug related offenses. I have drafted and conducted supervisor review of numerous search warrants.

(g) As a task force officer, I have participated in investigations and successful prosecution of individuals and organizations involved in trafficking heroin, cocaine, cocaine base ("crack"), marijuana, methamphetamine and other controlled substances as defined in 21 U.S.C.§ 801.

## PURPOSE OF AFFIDAVIT

3. This affidavit is made in support of an application for a federal arrest warrant and criminal complaint against **CHADD MICHAEL ANDERSON** for:

a. knowingly and intentionally distributing 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance, in violation of Title 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii);

b. knowingly and intentionally possessing with intent to distribute 5 grams or more of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance, in violation of Title 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii);

c. knowingly and intentionally possessing a firearm in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States - - namely, knowingly and intentionally possessing with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1), all in violation of 18 U.S.C. § 924(c)(1)(A).

d. knowingly and intentionally possessing with intent to distribute 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance, in violation of Title 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii); and

    e. knowingly and intentionally possessing a firearm in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States - - namely, knowingly and intentionally possessing with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1), all in violation of 18 U.S.C. § 924(c)(1)(A).

My knowledge of this investigation is based upon my own personal observations, as well as the observation and investigation conducted by other law enforcement officers knowledgeable of the facts and circumstances involved in the subject investigation. I have not included in this Affidavit all the facts known to me, but only that information sufficient to establish probable cause to believe that **CHADD MICHAEL ANDERSON** has committed the above-referenced violation.

4. The facts set forth within this affidavit come from the Affiant's own personal involvement with the investigation, as well as information provided by other law enforcement sources, officers, confidential sources, and reports, and this affidavit does not contain an exhaustive listing of each and every currently known fact concerning the investigation.

## FACTS SUPPORTING PROBABLE CAUSE

5. On April 30, 2019, an Ohio State Highway Patrol (OSHP) Confidential Source (CS), at the direction of and while under the control of Drug Enforcement Administration (DEA) investigators, completed a narcotics transaction with Chadd ANDERSON.

6. Prior the transaction, the CS telephonically communicated with ANDERSON to arrange the narcotics transaction. During the documented electronic communications, the CS arranged to purchase methamphetamine and heroin from ANDERSON that day. Prior to meeting with ANDERSON, the CS was searched to ensure the CS was free of any contraband. Once this was completed, the CS was provided with fifteen-hundred dollars ($1,500.00) in pre-recorded United States currency. The transaction was scheduled to occur in a Walmart parking lot in the Columbus, Ohio area. An undercover officer drove the CS to the meet location. DEA investigators maintained physical surveillance of the CS and the CS was equipped with an audio recording and transmitting device throughout the controlled drug buy.

7. Upon arriving at the parking lot, the CS exited the vehicle and met with ANDERSON who was in the parking lot in a Chrysler 300. The CS purchased both heroin and methamphetamine for $1,400.00. It should be noted following the narcotics transaction, investigators were provided with the additional one-hundred dollars ($100.00) by the CS which was unused during the transaction. Once the narcotics transaction was complete with ANDERSON, investigators were provided with the heroin and methamphetamine by the CS. The CS was subsequently searched again following the narcotics transaction to ensure the CS was free of any contraband. Once the search was complete, which yielded negative results, the CS and investigators departed from the area. CS advised investigators that ANDERSON displayed a handgun during the narcotics transaction by laying the handgun next to him on the vehicle's seat.

8. Following the completion of the narcotics transaction, investigators sent the suspected heroin and methamphetamine to the Ohio State Highway Patrol Crime Laboratory analysis. Upon receiving the results, investigators discovered the suspected heroin tested positive for heroin weighing approximately 4.7047 grams. Investigators also learned the suspected methamphetamine tested positive for methamphetamine weighing approximately 53.1282 grams. The methamphetamine was forwarded to the DEA North Central Laboratory for purity testing, the testing confirmed the methamphetamine to be 77% in substance purity.

9. On May 22, 2019, the Columbus Division of Police (CPD) conducted a traffic stop on a Chrysler 300 being operated by Chadd ANDERSON in the Columbus area. Upon CPD Officer Blaine making the initial approach to ANDERSON's vehicle, ANDERSON informed Officer Blaine that he was in possession of a firearm. Following this notification, Officer Blaine retrieved a Smith and Wesson M&P 9 millimeter handgun from ANDERSON's pants waistband. This handgun was later test fired by the CPD Crime Laboratory and determined to be operable. During the course of the administrative inventory of the vehicle, officers located a clear baggie containing a rock-like substance suspected to be methamphetamine.

10. Following this discovery, ANDERSON was verbally provided his Miranda Rights warnings which he acknowledged that he understood and voluntarily agreed to speak with investigators. During the interview, ANDERSON admitted the substance suspected to be methamphetamine was "Crystal". Based upon my experience and training, your Affiant is aware that "crystal" is a slang term for methamphetamine. ANDERSON additionally stated that he typically sells between 4 and 6 ounces of methamphetamine per day and 1 to 2 ounces of heroin per week. ANDERSON stated he has maintained this daily pattern for approximately six or seven months.

11. The suspected methamphetamine from the above traffic stop was submitted to the Ohio State Highway Patrol Crime Laboratory for analysis and confirmed to be methamphetamine weighing approximately 35.8481 grams. The methamphetamine was forwarded to DEA North Central Laboratory for additional testing and confirmed to be 100% in substance purity.

12. On April 21, 2021, in the Columbus, Ohio area, CPD Officers Groves and Chung conducted a traffic stop on a vehicle in which the driver was identified for purposes of tis affidavit as A.M. and ANDERSON was the passenger. Officers determined that neither A.M. or ANDERSON had a valid driver's license. During the course of the stop, Officer Groves observed ANDERSON repeatedly attempt to move a small bag under the passenger seat as Officer Groves interacted at the passenger window. Officer Groves asked ANDERSON to step out of the vehicle and asked for permission to conduct a pat-down for weapons, ANDERSON stated he had syringes concealed on his person. Officer Groves secured ANDERSON in handcuffs due to ANDERSON stating he was in possession of syringes. Officer Groves removed a drawstring type backpack from ANDERSON's back prior to securing him in handcuffs. Officer Groves noticed the bag

made a loud "thud" sound when it was placed on the ground. ANDERSON then told Officer Groves that there was a pound of "Ice" and some fentanyl inside the bag. Based on my experience and training, your Affiant is aware that "ice" is a slang term for methamphetamine Officer Groves opened the bag and located what appeared to be quantities of methamphetamine and fentanyl.

13. Officer Groves also conducted a search of ANDERSON's person and located a large bundle of United States currency on in his pants pocket. ANDERSON estimated the currency to be $8,000.00.

14. Officer Groves and Officer Pawlowski conducted an administrative inventory of the vehicle that was operated by A.M. and occupied by ANDERSON. The small bag that was between ANDERSON's feet was found to contain a loaded Smith & Wesson .380 Bodyguard handgun. This handgun was later test fired by the CPD Crime Laboratory and determined to be operable.

15. Officer Groves turned over the handgun, methamphetamine, and fentanyl that was seized from ANDERSON for processing. The methamphetamine was found to weigh approximately 501 grams and the fentanyl was found to weigh approximately 46.7 grams. Due to current standardized CPD policy and procedures, no presumptive testing was conducted on the methamphetamine or fentanyl. Based on their training and experience, Detective Warnick and Officer Groves both immediately identified the suspected methamphetamine and its packaging to be consistent with the appearance of methamphetamine.

16. Based upon my experience and training, I am aware that the above quantities of drugs possessed by ANDERSON are distribution quantities.

17. Based upon this information, your affiant believes probable cause exits that on the above dates, in the Southern District of Ohio, Chadd Michael ANDERSON:

    a. knowingly and intentionally distributed 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance, in violation of Title 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii);

    b. knowingly and intentionally possessed with intent to distribute 5 grams or more of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance, in violation of Title 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii);

    c. knowingly and intentionally possessed a firearm in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States -- namely, knowingly and intentionally possessing with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1), all in violation of 18 U.S.C. § 924(c)(1)(A).

d.  knowingly and intentionally possessed with intent to distribute 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance, in violation of Title 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii); and

e.  knowingly and intentionally possessed a firearm in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States -- namely, knowingly and intentionally possessing with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1), all in violation of 18 U.S.C. § 924(c)(1)(A).

Christopher Ellison
Task Force Officer
Drug Enforcement Administration

Sworn before me on this _30th_ day of April, 2021, in Columbus, Ohio.

Kimberly A. Jolson
United States Magistrate Judge